# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**GORDON E. STROPE,**

        **Plaintiff,**

                                  **CIVIL ACTION**
**vs.**                                  **No. 01-3009-JWL**

**NICK ROPER, et al.,**

        **Defendants.**

## MEMORANDUM AND ORDER

*Pro se* plaintiff Gordon E. Strope, a prisoner incarcerated at the Lansing Correctional Facility ("LCF") in Lansing, Kansas, brings this action against Nick Roper and Ted Jester, corrections officers at LCF; Brenda Miller, a corrections counselor at LCF; David McKune, the warden at LCF; and Charles Simmons, former Secretary of the Kansas Department of Corrections (collectively "defendants").[1] Pursuant to 42 U.S.C. § 1983, plaintiff generally alleges that defendants harassed him; subjected him to extra, unpaid work assignments; searched his cell excessively; denied him access to prison grievance procedures; terminated his prison job; and transferred him to a more violent cell house.

This action is before the court on defendants' motion for summary judgment (Doc. 48). As set forth in more detail below, the court grants defendants' motion and dismisses plaintiff's case without prejudice.

---

[1] The case was transferred to the undersigned judge after the death of Judge G. Thomas VanBebber.

## **I. Factual Background**

The following facts are taken from plaintiff's original complaint, amended complaint, and his response to defendants' motion for summary judgment. Plaintiff's claims derive from a series of alleged events between October 1999 and January 2001.

On October 30, 1999, plaintiff interviewed for a building maintenance job with Sergeant Jerry Keeth and defendant Nick Roper. During the interview, plaintiff asserts that defendant Roper stated that he did not want to hire plaintiff because he filed too many grievances. Notwithstanding this alleged statement, plaintiff was hired as a cell house porter.

On or about Thanksgiving Day 1999, plaintiff claims that defendant Roper ordered him out of his cell to clean up a mess caused by a small riot in the restriction unit; a task that plaintiff states was not included in his job responsibilities. While performing this assignment, plaintiff alleges that other inmates spit on him, threw a book at his head, and threatened him with physical injury. The next day, plaintiff claims that defendant Roper asked him to sign a custody waiver that would protect defendant Roper from any disciplinary action as a result of placing plaintiff in a dangerous position. In response, plaintiff states that he attempted to informally resolve the situation with Unit Team Manager Ben Reynolds and Sergeant Davis.

On November 28, 1999, plaintiff asserts that defendant Roper threatened to take his job and put him in segregation for reporting the situation to Officer Reynolds and Sergeant Davis. Furthermore, defendant Roper allegedly ordered plaintiff to work on his "2-10" shift in addition to plaintiff's regular "6-2" shift. For the next five-and-a-half months, plaintiff claims that he was forced to work on defendant Roper's shift, working on average twelve to fourteen hours a day without overtime pay. Plaintiff maintains that this "abuse of inmate labor" ended when he filed a grievance on May 4, 2000 and he was subsequently removed from defendant

Roper's shift. This complaint, plaintiff asserts, led to several acts of harassment between May and October 2000.

Plaintiff first alleges that on May 4, 2000, defendant Roper "ransacked his cell." On May 12, plaintiff states that he met with Officer Reynolds, who informed him that defendant Roper wanted to take his job and transfer him to another cell house because of plaintiff's May 4 complaint. On May 13, plaintiff alleges that defendant Roper did not permit him to shower because of the complaint plaintiff filed against him. Due to this incident, plaintiff claims that he filed another complaint against Roper on May 14, and that Roper "trashed" his cell again.

On September 2, 2001, plaintiff alleges that he requested ice because of the heat and the fact that his sink was broken. In response, plaintiff maintains that defendant Roper ordered him to leave his cell while he looked at his sink. When plaintiff returned, he claims that defendant Roper had "ransacked" his cell. Again, plaintiff filed a grievance against defendant Roper, but plaintiff states that prison officials refused to take any corrective action on his complaint.

Plaintiff states that between October and December 2000, he was denied access to the prison's complaint procedures. Specifically, plaintiff maintains that defendants Miller and Jester never responded to several "Form 9's" or two to three formal complaints that he filed. On December 5, plaintiff states that he filed two formal complaints with defendant Jester. On December 13, plaintiff alleges that defendant Miller called him to her office and handed back the two grievances he filed with defendant Jester. Plaintiff claims that defendant Miller told him to forget about the grievances or he would lose his job. On or about December 18, plaintiff states that defendant Roper and Sergeant Dieselhoff searched his cell for missing coffee creamer. Plaintiff asserts that no other cell house porters had their cells searched.

3

On December 20, 2000, plaintiff states that he forwarded a grievance to defendant McKune regarding the alleged harassment he received from defendants Roper and Miller. On January 2, 2001, when defendant McKune did not respond in the time allegedly afforded by prison policies, plaintiff asserts that he handed a complaint to defendant Jester addressing his inability to utilize the prison's grievance procedures, as well as the harassment he received from defendants Roper and Miller. Defendant Jester allegedly told plaintiff that "there will be no more of this." On January 4, plaintiff was transferred from cell house D to cell house B-1, and he was terminated from his cell house porter job.

## II.  Discussion

Based on the events alleged in his original complaint and amended complaint, plaintiff claims that: defendant Roper violated his First Amendment rights by retaliating against him for filing grievances and violated his Fourteenth Amendment rights to equal protection and due process by forcing him to work twelve to fourteen hours a day without overtime pay; defendant Miller violated his Fourteenth Amendment rights to equal protection and due process by denying him access to the prison's grievance procedures and failing to respond to his complaints; and all defendants violated his First and Fourteenth Amendment rights by transferring him to another cell house and terminating his cell house porter job in retaliation for filing grievances.[2]

While defendants' motion for summary judgment raises several grounds to dismiss plaintiff's case, the court need only address one: plaintiff's failure to exhaust his administrative remedies pursuant to the Prison

---

[2]   In his original complaint, plaintiff also alleged that defendants McKune and Simmons violated his constitutional rights because the grievance procedures at LCF did not provide the basic elements of due process and fundamental fairness. In a previous order (Doc. 7), Judge VanBebber dismissed plaintiff's challenge to the grievance system, determining that a prison grievance procedure does not "'give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth amendment.'" Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citation omitted).

4

Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

### A. Standard of Review

Defendants' motion is considered under Fed. R. Civ. P. 12(b)(6) because "a complaint that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1210 (10th Cir. 2003) (quotation omitted).

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief," Aspenwood Inv. Co. v. Martinez, 355 F.3d 1256, 1259 (10th Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive. Neitzke v. Williams, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1088 (10th Cir. 2003).

In deciding a Rule 12(b)(6) motion based on exhaustion of administrative remedies under 42 U.S.C. § 1997e(a), the court may consider administrative materials attached to the prisoner's complaint. See Steele, 355 F.3d at 1212 (citing Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001)). If the prisoner does not incorporate by reference or attach the relevant administrative decisions, "a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." Id. (quoting GFF Corp. v. Associated Wholesale Grocers Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)).[3]

---

[3] On March 31, 2004, Judge VanBebber ordered plaintiff to supplement the record because he could not ascertain whether plaintiff exhausted his claims to the Secretary of Corrections (Doc. 56). Plaintiff responded on April 8, 2004, by providing a six-page affidavit in which he stated that all grievances in the case were properly submitted to the Kansas Department of Corrections (Doc. 57). Plaintiff did not provide any

5

B. The Exhaustion Requirement

Section 1997e(a) of the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. 1997e(a). Congress enacted the PLRA's exhaustion requirement "to reduce the quantity and improve the quality of prisoner suits." Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) effectuates this purpose by "1) allowing prison officials an opportunity to satisfy the inmate's complaint, thus potentially obviating the need for litigation; 2) filtering out some frivolous claims; and 3) creating an administrative record that facilitates review of cases that are ultimately brought to court." Ross v. County of Bernalillo, 365 F.3d 1181, 1184 (10th Cir. 2004) (citation omitted).

The PLRA "requires that 'available' administrative remedies be exhausted prior to filing an action with respect to prison conditions under § 1983." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). A prisoner must exhaust the administrative remedies available, even where those remedies would appear to be futile. Id. (citation omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." Id. (citation omitted). "[T]he doctrine of substantial compliance does not apply" to cases arising under the PLRA. Id.

It is the inmate's burden to plead sufficient exhaustion of administrative remedies. Steele, 355 F.3d at 1209. Recently in Simmat v. United States Bureau of Prisons, the Tenth Circuit stated:

> To satisfy the PLRA's exhaustion requirement, a prisoner must do more than allege that he has

---

additional documentation to support exhaustion, but cited to evidence already contained in the record.

> exhausted his administrative remedies. To state a claim for relief, a prisoner must (1) make a "short and plain statement of the claim," Fed. R. Civ. P. 8, and (2) "attach[] a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome."

No. 03-3361, 2005 WL 1541070, at *9 (10th Cir. July 1, 2005) (quoting Steele, 355 F.3d at 1210, in turn quoting Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000)). Additionally, the Tenth Circuit has construed the PLRA to require total exhaustion. Ross, 365 F.3d at 1190. If a prisoner files "a complaint containing one or more unexhausted claims, the district court must ordinarily dismiss the entire action without prejudice." Id.

Defendants maintain that plaintiff failed to exhaust all of the remedies made available by the Kansas Department of Corrections ("KDOC"). The grievance procedure for Kansas state prisoners is described fully in Kansas Administrative Regulations Article 44 Section 15. K.A.R. § 44-15-102 requires an inmate to "first seek information, advice, or help on any matter from the inmate's unit team, or from a member of the team." § 44-15-102(a)(1). If the inmate does not receive a response from the unit team within ten days of submission, he or she may send a grievance report to the warden without unit team signatures. See § 44-15-102(a)(2). If the inmate receives a response but does not obtain a satisfactory solution to the problem through the informal process within ten days, he or she may complete an inmate grievance report form and submit it to a staff member to transmit to the warden. See § 44-15-102(b). If he or she does not receive a satisfactory response from the warden after filing an appropriate report, the inmate may appeal to the Kansas Secretary of Corrections. See § 44-15-102(c)(1).

The record contains three administrative grievances germane to the allegations in plaintiff's original complaint and amended complaint; AA20000885; AA20010566; and AA20010590.

7

1. Administrative Grievance AA20000885

First, in administrative grievance AA20000885, filed May 4, 2000, plaintiff claimed that defendant Roper misused inmate labor, abused his powers, and harassed plaintiff. In particular, he asserted that over the previous five months, defendant Roper constantly called him out of his cell to perform several odd jobs and to run errands, forcing him to work on average twelve to fourteen hours a day without overtime pay. Plaintiff claimed that the extra work often placed him in danger, citing the alleged Thanksgiving 1999 incident where defendant Roper made him clean up a mess caused by a mini-riot in the restriction unit. Plaintiff also contended that on May 4, defendant Roper made him pass out ice in the restriction unit after he had already worked for twelve hours. The Unit Team response, dated May 12, 2000, stated that plaintiff would only work the day shift unless an emergency arose. It further noted that the job of cell house porter required plaintiff to clean the cell house and to be available to work when he was told to do so. The response concluded that overtime pay was not provided for working more than eight hours and that no further action was required. Plaintiff subsequently directed his complaint to the warden, defendant McKune. On May 16, defendant McKune responded, determining that the Unit Team response was correct and that further action was unnecessary.

Absent from the record is any documentation proving that plaintiff appealed defendant McKune's decision to the KDOC. Plaintiff maintains that he properly appealed administrative grievance AA20000885 to the KDOC, but that defendant Simmons never responded. To support his claim, plaintiff attached a yellow "sticky" note to administrative grievance AA20000885, which stated in his handwriting: "appeal and legal notice sent to Sec. 5/22/00." It is plaintiff's position that defendant Simmons's failure to timely answer denied him final review of his grievance and constituted full exhaustion under the PLRA. See Jernigan, 304 F.3d at 1032 (agreeing that "the failure to respond to a grievance within the time limits contained in the grievance policy

8

renders an administrative remedy unavailable").

Plaintiff's conclusory statement that he exhausted this grievance and his yellow "sticky" note stating that he sent an appeal on May 22 is not sufficient to meet his burden of exhaustion. See Simmat, 2005 WL 1541070, at *9 (concluding that neither the complaint nor the record provided information sufficient to satisfy the PLRA's exhaustion requirement). The court initially observes that plaintiff attached a letter from the KDOC to his original complaint, dated June 27, 2000. This correspondence responded to his "letters to Attorney General Carla Stovall dated May 22, 2000 and May 31, 2000" in which plaintiff claimed that the prison's grievance procedure was inadequate. While this letter establishes that plaintiff sent a complaint to Attorney General Stovall regarding the alleged inadequacy of the prison's grievance procedure, it does not demonstrate that plaintiff appealed administrative grievance AA20000885 to the KDOC on May 22 regarding defendant Roper's alleged abuse of inmate labor. Moreover, defendant Simmons, in an affidavit dated July 30, 2001, states that administrative grievance AA20000885 "appear[s] to have been resolved at the facility level and [was] not submitted for review at the secretary's level." In support, defendant Simmons cited Offender Management Information System ("OMIS") records, attached for the court's review, which indicate that the KDOC never received this grievance for review.

Accordingly, the court finds that plaintiff failed to exhaust his administrative remedies for administrative grievance AA20000885.

### 2. Administrative Grievance AA20010566

Next, the record contains administrative grievance AA20010566, dated December 20, 2000. In that complaint, plaintiff accused defendant Roper of harassment and retaliation on an ongoing basis since May 2000 for plaintiff's use of the prison's grievance procedures. In a five-page letter attached to the grievance form,

9

plaintiff repeated his allegations about defendant Roper's abuse of inmate labor, stating that his grievances were not satisfactorily resolved even though defendant McKune decided that plaintiff was not to work on defendant Roper's "2-10" shift. Since May 2000, plaintiff claimed that he was "not let out for yard, shower or ice in the excessive hot months"; on two occasions, he found his mail in the trash during defendant Roper's run; his mail was brought to his cell at night, when other inmates received their mail earlier; he was not permitted phone calls on Saturday night; and he was subject to "excessive shake-downs." The most recent act of retaliation, plaintiff claimed, occurred on December 19, when Sergeant Dieselhoff ordered him out of his cell because defendant Roper was looking for coffee creamer. Plaintiff claims this act was "vindictive and arbitrary" because the other cell house porters did not have their cells searched. Finally, plaintiff alleged that defendant Miller unfairly reviewed his "Form 9's" and other complaints about defendant Roper.

On December 21, 2000, defendant McKune asked for a Unit Team response to plaintiff's complaint, determining that plaintiff's issues could be resolved at that level. Defendant Jester responded to defendant McKune's request in a memorandum dated December 29. In summary, defendant Jester noted that plaintiff failed to provide any evidence to support his claims of ongoing harassment and retaliation, including specific dates or witnesses to support his allegations. Moreover, defendant Jester observed that many of plaintiff's examples of harassment and retaliatory acts occurred outside the time limit for filing grievances. See K.A.R. § 44-15-101b ("Grievances shall be filed within 15 days from the date of the discovery of the event giving rise to the grievance . . . ."). Defendant Jester concluded that no officer subjected plaintiff to any acts of harassment or discrimination. As a result, defendant McKune sent plaintiff a response dated January 8, 2001, in which he concluded that his allegations against defendants Jester, Miller, and Roper were unsubstantiated and that no further action was necessary.

The record lacks documentation of a decision from the KDOC regarding administrative grievance AA20010566. Again, defendant Simmons's affidavit states that the KDOC never received AA20010566 for review, and this statement is supported by OMIS records. Nevertheless, plaintiff reiterates that he exhausted his remedies by appealing to the KDOC, but that he never received a response.

Plaintiff explains that on December 5, 2000, he filed two grievances relating to the conduct of defendants in this lawsuit, and that defendant Miller returned them to him on December 13. Because plaintiff considered these complaints untimely answered, he asserts that on December 20, he sent administrative grievance AA20010566 to defendant McKune. Plaintiff contends that defendant McKune did not answer his complaint in time. As a result, he claims that he compiled the three "unprocessed grievances," as well as other issues relating to this case, into a six-page complaint and mailed them to defendant Simmons on January 2, 2001. In support, plaintiff directs the court to "exhibit 5," attached to his previous motion for summary judgment (Doc. 38). Exhibit five is a "Special Purpose Order," dated January 2, 2001, directing that fifty-five cents be paid for postage and charged to plaintiff's account. The form contains the address for the KDOC and states "final exhaustion of 12/20/2000-6 pg. complaint to Charles Simmons." Finally, plaintiff maintains that when defendant McKune responded to administrative grievance AA20010566 on January 10, he "re-appealed" the decision to defendant Simmons on January 12, but never received a response.

The court finds that the Special Purchase Order provides a reasonable inference that plaintiff sent an appeal to the KDOC on January 2, 2001.[4] Plaintiff's reliance on this evidence, however, is misplaced because

---

[4]   The court observes that attached to plaintiff's amended complaint (Doc. 5) is a letter from the KDOC, dated January 11, 2001. The letter states that it is in response to plaintiff's "grievance report form" that KDOC received on January 11, but the letter does not identify a grievance number. For that reason, the court cannot conclude that this is a response to administrative grievance AA20010566. In any event, the January 11 letter

11

it demonstrates that he failed to comply with the timeline for appealing defendant McKune's decision under K.A.R. § 44-15-102(c)(3). That regulation provides: "When an appeal of the warden's decision is made to the secretary, the secretary shall then have 20 calendar days from receipt to return the grievance report form to the inmate with an answer." K.A.R. § 44-15-102(c)(3). Therefore, even assuming plaintiff sent an appeal of administrative grievance AA20010566 to KDOC on January 2, 2001, and then "re-appealed" defendant McKune's response on January 12, plaintiff did not provide the KDOC twenty days, from receipt, to process his grievances. See Brewer v. Mullin, 130 Fed. Appx. 264, 265 (10th Cir. 2005) ("Simply presenting a defective or non-complying grievance . . . does not constitute exhaustion of remedies."). Rather, plaintiff rushed to federal court and filed his original complaint on January 8, 2001.

Accordingly, the court finds that plaintiff's conclusory allegation that he properly exhausted administrative grievance AA20010566 does not satisfy his burden under the PLRA.

### 3. Administrative Grievance AA20010590

Lastly, the record contains administrative grievance AA20010590, dated January 3, 2001, in which plaintiff claims that he lost his cell house porter job and was transferred to another cell house for allegedly filing complaints against defendants Roper and Miller. Defendant Jester provided a Unit Team response on January 8, 2001. He stated that the decision to transfer plaintiff was solely his, and that he did not receive any complaints or negative reports from defendants Roper or Miller. Furthermore, defendant Jester explained that shortly after he took over, prison management decided to rotate cell house porters in the maximum security compound, and that plaintiff and another inmate were the last of the original crew to be rotated. Unsatisfied with defendant

---

concluded that plaintiff failed to provide evidence that he conferred with his unit team or the principal administrator of LCF before appealing to the Secretary of Corrections.

Jester's response, plaintiff directed his complaint to defendant McKune on January 10. Defendant McKune responded in a memorandum dated January 18, concluding that the Unit Team's decision on his living unit assignment was based on an ongoing assessment of plaintiff's and the facility's needs, and thus no further action was necessary.

Plaintiff contends that he appealed administrative grievance AA20010590 to the KDOC, although he does not provide a specific date or cite to the court any other evidence in the record to support his claim. The affidavit of defendant Simmons and the OMIS records reflect that the KDOC never received an appeal of administrative grievance AA20010590. Furthermore, the record shows that plaintiff did not receive defendant McKune's response until January 30, 2001. Nevertheless, plaintiff filed his amended complaint to add defendant Jester as a party on January 26, 2001, disregarding the appeal procedures outlined by K.A.R. § 44-15-102.

Accordingly, the court finds that plaintiff failed to exhaust his administrative remedies for administrative grievance AA20010590.

Because plaintiff fails to satisfy the PLRA's total exhaustion requirement, the court grants defendants' motion and dismisses plaintiff's case without prejudice.

**IT IS THEREFORE BY THE COURT ORDERED** that defendants' motion for summary judgment (Doc. 48) is granted. The case is dismissed without prejudice.

**IT IS SO ORDERED** this 13th day of July, 2005.

    s/ John W. Lungstrum
    John W. Lungstrum
    United States District Judge